# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| American Airlines, Inc., | ) |
| Plaintiff, | ) |
| | ) Case No. 1:25-cv-04874 |
| v. | ) |
| | ) Hon. Judge Joan H. Lefkow |
| The City of Chicago, | ) |
| Defendant. | ) |

## UNITED AIRLINES, INC.'S MOTION TO INTERVENE

Pursuant to Federal Rules of Civil Procedure 24(a), United Airlines, Inc. ("United"), by and through its undersigned attorneys, respectfully requests that this Court grant United's Motion to Intervene. In support of its motion, United respectfully refers the Court to the attached memorandum of law and accompanying exhibits.

Dated: May 5, 2025

Respectfully submitted,

*/s/ Gabor Balassa, P.C.*
Gabor Balassa, P.C.
Amarto Bhattacharyya
gbalassa@kirkland.com
amarto.bhattacharyya@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
United States
Telephone: +1 312 862 2000

*Attorneys for United Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I, Gabor Balassa , an attorney, certify that on this date, May 5, 2025, I caused a true and correct copy of the foregoing **UNITED AIRLINES, INC.'S MOTION TO INTERVENE** to be electronically filed with the Clerk of the Court using CM/ECF, which will serve on all counsel of record.

                                                         */s/ Gabor Balassa, P.C.*
                                                         Gabor Balassa, P.C.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| American Airlines, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The City of Chicago, ) <br> ) <br> Defendant. ) | Case No. 1:25-cv-04874 <br><br> Hon. Judge Joan H. Lefkow |

## MEMORANDUM OF LAW IN SUPPORT OF
## UNITED AIRLINES, INC.'S MOTION TO INTERVENE

United Airlines, Inc. ("United") by and through its undersigned counsel, respectfully moves this Court to permit United to intervene in the above-captioned action, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Given United's compelling interest in the substance of this lawsuit, and because United's intervention could bear on the Court's diversity jurisdiction,[1] United submits that this Motion should be heard before other motions before the Court. The grounds supporting this Motion are set forth below.

## INTRODUCTION

What American Airlines, Inc. ("American") has dressed up as a contract claim against the City of Chicago (the "City") in fact amounts to a desperate attack against American's chief rival at O'Hare, United. United has invested more and flown more at O'Hare than any other airline. As a result, under the gate redetermination process provided for in the airlines' contract with the City, United is entitled to additional gates at O'Hare. This contractual reallocation process is designed

---

[1] If this Motion is granted, United would file a motion to dismiss in substantially the form of Exhibit 4 to the May 5, 2025 Declaration of G. Balassa ("Balassa Decl.").

to incentivize airlines to invest more in O'Hare and maximize their use of assigned gates, as United has done.

American, by contrast, has invested less at O'Hare, choosing instead to prioritize other hub airports, including Charlotte and Dallas, over O'Hare. At the same time, American has made less efficient use of the gates it has been granted at O'Hare, flying less than United from its assigned gates. American therefore stands to lose gates at O'Hare in the contractual redetermination process. If it had efficiently and fully utilized its gates, American would not find itself in this predicament. Dissatisfied with this foreseeable and self-inflicted loss of gates, American seeks to block the redetermination process from going forward at the expense of United and of passengers and employees at O'Hare who would benefit from increased flights and utilization of the airport.

As administrator of O'Hare, the City's Department of Aviation ("CDA") has announced that it agrees with United's position that redetermination should go forward. Over at least the past three months, the CDA has repeatedly met with the airlines at O'Hare to communicate the CDA's preliminary views and to obtain the airlines' feedback, moving the redetermination process forward on the schedule provided for in the governing contract. Based on the City's calculations of the airlines' 2024 flight data, the City has notified the parties that United may gain additional gates and American stands to lose gates. American seeks to derail that reallocation.

United is entitled to intervene as of right in this case. The lawsuit concerns the interpretation of a contract to which United is a party and seeks to deprive United of additional gates that it has earned under the contract. From the Complaint's very first page, American takes aim at United's actions, including United's initiation in January 2025 of the gate redetermination process that American seeks to block. American also impugns United's motivations, accusing United of seeking to make O'Hare a single-hub airport, when the documents American cites say

2

no such thing.[2]  Accordingly, there can be no question that United has an interest—indeed, a direct and material one—in the subject matter of this lawsuit that would be impaired if the Court granted the relief American has requested.

While the City's lawyers are highly capable advocates, they do not speak for United and cannot adequately present United's arguments or represent its interests with respect to United's interpretation of the contract, United's intent when it signed the contract, and United's course of dealing under the contract.  Nor could the City's lawyers speak to the harm United would suffer if the Court were to enter a judgment in line with American's interpretation of the AULA, which would interfere with United's contractual rights and potentially halt the redetermination process that United initiated in January 2025.

## BACKGROUND

### A. The AULA and Gate Redetermination at O'Hare

In March 2018, United, American, and other airlines operating at O'Hare entered into the Airline Use and Land Agreement ("AULA") with the City of Chicago for a term of 15 years.  Ex. 1 to Balassa Decl., Airline Use and Lease Agreement.  The AULA provides that, after certain construction projects are complete, an airline can request the "redetermination" of assigned gate space. *Id.* §§ 5.4.1, 5.2.4; *see also id.* § 5.3.2.  In redetermining gate space, the CDA is to consider certain factors including, most importantly, the number of scheduled departures from an airline's designated gates over the prior calendar year.  *Id.* § 5.4.1.  The purpose of the redetermination process is to ensure an efficient and fair allocation of gate space by rewarding the airlines that invest the most in O'Hare with the opportunity to fly more flights in the future.

---

[2]  Further, a reduction of American's gates from 71 to 67 gates would not compromise in the slightest O'Hare's status as a dual-hub airport.  https://chicago.suntimes.com/transportation/2025/05/02/american-airlines-gates-ohare-united-transportation

On January 28, 2025, pursuant to Sections 5.2.4 and 5.3.2 of the AULA, United requested that the CDA initiate the redetermination process. Ex. 2 to Balassa Decl., 1/28/2025 Letter from United to CDA. In its letter, United stated that, based on the factors in Section 5.4.1 for calculating gate redetermination, United expected that at least six additional gates would be available to it after redetermination. *Id.*

On February 3, 2025, the CDA sent a notice to the airlines stating that a redetermination of Gate Space provided for under the AULA had been triggered pursuant to Section 5.4.1. Compl. ¶ 48. On February 28, 2025, American sent a letter to the CDA objecting to the redetermination of gate space. Compl. ¶ 49. On March 24, 2025, the CDA issued a response that reaffirmed its conclusion that the redetermination process is timely under the AULA. Ex. 3 to Balassa Decl., 3/24/2025 CDA Letter to All Airlines. In particular, the CDA stated that all conditions for redetermination have been satisfied and that arguments to the contrary "would lead to absurd results." *Id.*

Consistent with the AULA's timeline for redetermination, on April 1, 2025, the CDA provided all airlines with its proposed initial determinations of gate space at O'Hare. Compl. ¶¶ 12 & n.2, ¶ 73; AULA § 5.4.6. The airlines and the CDA then engaged in discussions throughout April concerning potential modifications to the CDA's initial determinations. Pursuant to AULA Section 5.4.6(a), relevant airlines had until May 1, 2025 to provide written notice to the CDA of the rejection of or request for a reduction in assigned gate space.

American filed this lawsuit against the City and CDA Acting Commissioner on May 2, 2025. American seeks, among other things, a declaratory judgment and injunctive relief to halt the redetermination of gate space at O'Hare until 2027.

4

**LEGAL STANDARD**

Under Fed. R. Civ. P. 24, intervention as of right should be granted when the movant: "(1) makes a timely application; (2) has an interest relating to the subject matter of the action; (3) that would potentially be impaired by the disposition of the action; and (4) is not adequately represented by the existing parties to the action." *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 924 (N.D. Ill. 2012) (citing *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)); *see also Sokaogon Chippewa Cmty v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000). "Courts should construe Rule 24(a)(2) liberally and should resolve doubts in favor of allowing intervention." *Michigan v. U.S. Army Corps of Engr's*, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010) (citing *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 241 (S.D. Ill. 2001)).

**ARGUMENT**

**I.      UNITED IS ENTITLED TO INTERVENE AS OF RIGHT.**

United "must" be permitted to intervene as of right. Fed. R. Civ. P. 24(a). The lawsuit concerns the interpretation of a provision in a contract to which United is a party and that directly affects United's rights and economic interests. It was United's January 28, 2025 letter, in which United exercised its contractual right to request that the CDA proceed with redetermination, which began the redetermination process to which American objects.

The City can capably address its own interpretation of the contract and the adverse implications of American's arguments for O'Hare. But the City does not and cannot adequately address United's interests. As the airline that has invested most in O'Hare and heavily utilized its gates, United stands to benefit most from gate redetermination. Only United can speak to its interpretation of the AULA and the adverse economic consequences of American's attempts to block redetermination. Accordingly, United's intervention in this litigation is proper, as a matter of right.

## A. United Has a Legally Protectable Interest in Redetermination.

United has a legally protectable interest in its right to gate redetermination under the AULA. *See, e.g.*, AULA §§ 5.2.4, 5.3.2, 5.4.1. Courts routinely hold that intervention is proper as a matter of right where the underlying suit would affect the proposed intervenor's contractual rights. *See, e.g.*, *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1259, 1261 (7th Cir. 1983) (reversing denial of motion to intervene as of right where intervenor held a security interest in a contract that was "the subject of the suit in which he seeks to intervene" and, as such, the suit could result in intervenor's contract rights being "destroyed"); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (reversing denial of intervention as of right where companies had "legally protectable property interests in existing timber contracts that are threatened by [the lawsuit]"); *cf. Wade v. Goldschmidt*, 673 F.2d 182, 186 n. 6 (7th Cir. 1982) (denying intervention because the underlying litigation would ***not*** "directly alter contractual or other legally protectable rights of the proposed intervenors").

Among the airlines that are parties to the AULA, United has the single greatest interest in the resolution of the parties' dispute in this lawsuit. ***First***, United is the airline that invoked its contractual right to gate space redetermination, which precipitated the redetermination process that American seeks to derail in this lawsuit.

***Second***, United has a direct economic interest in the redetermination proceeding. That interest warrants intervention. *See Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 744, 748 (7th Cir. 2020). In what the Seventh Circuit characterized as "a paradigmatic case for intervention as of right," the court in *Driftless* reversed the district court's order that had denied intervention, because the putative intervenors were transmission manufacturers that had "substantial sunk and anticipated future investment" as well as "a valid expectation of a return on their investment" in an energy project that the lawsuit jeopardized by challenging the project's

6

permit. *Id*. The fact that a government entity (*i.e.*, the transmission companies' regulator) was named as a defendant in the lawsuit was no substitute for allowing the regulated entities with a direct economic interest in the lawsuit's outcome to participate in the litigation. *Id.* United has spent years investing in growth at O'Hare, (May 5, 2025 Declaration of Mark Weithofer ("Weithofer Decl.") ¶ 4), with the expectation that it would be entitled to a timely redetermination of gate space to allow further growth. In the redetermination process, the City announced that United stands to receive additional gates at O'Hare, Compl. ¶ 73, which translates into approximately six roundtrip flights per additional gate per day, the loss of which would impair United's ability to offer planned flights out of O'Hare. Weithofer Decl. ¶¶ 6–7. American cannot proceed with a lawsuit aimed at denying United the opportunity to deliver these additional flights to passengers at O'Hare without United participating as a party.

Further, "[t]he clearest example" of a legally protectable interest "is where the would-be intervenor has a legal claim that could be made the basis of an independent suit against the defendant in the action in which he seeks to intervene." *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007 at *2 (N.D. Ill. June 25, 2015) (quoting *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996) (granting motion to intervene).

As the airline that initiated the redetermination of gate space and that stands to gain the most gate space from that process, Compl. ¶ 12, United could pursue its own declaratory judgment action against American and the City, asking a court to resolve whose interpretation of the AULA—American's or United's—is correct. *Lyons Sav. and Loan Ass'n v. Geode Co.*, 641 F. Supp. 1313, 1319 (N.D. Ill. 1986) ("A suit under the Declaratory Judgment Act is appropriate for a contracting party seeking resolution of actual disputes regarding the interpretation of that

contract."). But rather than forcing United to initiate a separate lawsuit to protect its interests, the Court should grant leave for United to intervene as a matter of right. *Atain Specialty Ins. Co. v. Hodge*, 2022 WL 4367358 at *2 (S.D. Ill. Sept. 21, 2022) (granting motion to intervene as of right where "there is consistency in resolving these issues in a single proceeding and denial of intervention could create conflicting results").

      **B.**      **The City Does Not Adequately Represent United's Interests in and Right to Gate Redetermination.**

Intervention as of right is also appropriate because neither of the existing parties to this lawsuit will adequately represent United's interests. This requirement for intervention "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Lake Invs. Dev. Grp., Inc.*, 715 F.2d, at 1261 (same); *Michigan*, 2010 WL 3324698, at *6 (The "burden of showing inadequate representation … is not onerous. The applicant need only show that representation of its interest 'may be' inadequate, not that representation will in fact be inadequate.") (citation omitted).

The "partial congruence of interests" that may exist today between the City and United "does not guarantee the adequacy of representation." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003). After all, "interests need not be wholly adverse before there is a basis for concluding that existing representation of a different interest may be inadequate." *Id.* (quotations omitted). Indeed, "even a shared general agreement does not necessarily ensure agreement in all particular respects, and the tactical similarity of the present legal contentions of the parties does not assure adequacy of representation or necessarily preclude the intervenor from the opportunity to appear in its own behalf." *Id.* (cleaned up).

8

Here, the City is differently situated, with different rights and obligations under the AULA than the airlines. *See, e.g.*, AULA § 5.4.1 (requiring the City to perform redetermination if a Long-Term Signatory Airline requests it); § 5.4.1(a–b) (requiring the City to calculate each airline's Preferential Use Gate Space based upon each airline's share of Scheduled Departures in the prior year); § 5.6.1 (requiring City to maintain Long-Term Signatory Airlines' Preferential Use Gate Space during Terminal Area Plan construction). Further, United's and the City's interests differ: United has an interest in realizing its growth strategy in which it has heavily invested based on the promise of additional gate space in a redetermination, while the City's "obligations [also] are to the general public, not to the [airlines] or their investors." *Driftless*, 969 F.3d at 748. Thus, because the City, as O'Hare's administrator, does not share all the same interests as the airlines that utilize the airport, the City is not an adequate substitute for United. *Id.*

What's more, because American's interpretation of the AULA finds no support in the contract's plain terms, American invokes parol evidence in an attempt to support its interpretation of the contract. *See, e.g.*, Compl. ¶¶ 61–69. If the Court were to consider such parol evidence, United must be allowed to speak for itself, as the City cannot address United's intent when it entered into the contract, nor United's course of dealing since its execution. Nor can the City address the economic harm to United, its passengers, and employees that would flow from delaying redetermination past the October 1, 2025 date provided for in the AULA.

At bottom, United cannot be relegated to the sidelines while the City and American litigate to advance their respective interests, with American seeking an outcome that would impair United's rights and potentially squander United's unparalleled financial investment in O'Hare.

## **CONCLUSION**

For the foregoing reasons, United respectfully requests that the Court grant United's request to intervene as of right in this lawsuit.

Dated: May 5, 2025

Respectfully submitted,

*/s/ Gabor Balassa, P.C.*

Gabor Balassa, P.C.
Amarto Bhattacharyya
gbalassa@kirkland.com
amarto.bhattacharyya@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
United States
Telephone: +1 312 862 2000

*Attorneys for United Airlines, Inc.*

# CERTIFICATE OF SERVICE

I, Gabor Balassa , an attorney, certify that on this date, May 5, 2025, I caused a true and correct copy of the foregoing **UNITED AIRLINES, INC.'S MOTION TO INTERVENE** to be electronically filed with the Clerk of the Court using CM/ECF, which will serve on all counsel of record.

                                                   */s/ Gabor Balassa, P.C.*
                                                   Gabor Balassa, P.C.