# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Airlines, Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:25-cv-04874 |
| ) | |
| v. ) | Hon. Judge Joan H. Lefkow |
| ) | |
| The City of Chicago, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED AIRLINES'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Intervenor–Defendant United Airlines, Inc., ("United") by and through its undersigned counsel, and pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, respectfully requests this Court to dismiss the above-captioned action based on lack of subject matter jurisdiction. The grounds supporting this Motion are set forth below.

**INTRODUCTION**

United is entitled to intervene as of right in this lawsuit concerning the interpretation of a contract to which United is a party and the meaning of a provision that is critically important to United's business. Because American Airlines, Inc. ("American") and United are both Delaware corporations, and they are adverse in this lawsuit, United's intervention defeats diversity jurisdiction if United is deemed an "indispensable party." *Costain Coal Holdings, Inc. v. Resource Inv. Corp.*, 15 F.3d 733, 734–35 (7th Cir. 1994).

United indisputably is indispensable. Over the years, United has made unparalleled investments in Chicago O'Hare International Airport ("O'Hare"), which led United to make heavier use than any other airline of its assigned gates. The Airline Use and Lease Agreement ("AULA"), between the City of Chicago (the "City"), United, American, and others, rewards

airlines that maximize flights from O'Hare with the potential of receiving additional gates in an annual redetermination process. Ex. 1 to May 5, 2025 Decl. of G. Balassa ("Balassa Decl."), AULA § 5.4. Accordingly, under the AULA, United stands to gain additional gates in the redetermination process that American seeks to block in this lawsuit. Compl. ¶¶ 12, 14.

American, by contrast, has not demonstrated comparable commitment to flying to and from O'Hare. Given its less effective utilization of gate space, American stands to lose gates in a redetermination. *Id*. ¶ 73. Thus, contrary to United's contractual rights and economic interests, American opposes the redetermination that United requested and that the City plans to undertake. The Complaint's allegations about United further underscore United's significance to the lawsuit. The Complaint contains more than 40 allegations about United, including highlighting United's role in initiating the redetermination process and falsely impugning United's motivations for seeking redetermination. *See, e.g.*, Compl. ¶¶ 2–4, 7, 8, 12, 43, 73, 78, 90. Accordingly, an adverse ruling in this lawsuit would materially and unavoidably prejudice United.

United shares the City's interests in allocating gates to maximize their use and increase the number of flights at O'Hare. The City's lawyers, however, do not speak for United. They cannot adequately present United's arguments with respect to United's interpretation of the contract, United's intent when it signed the AULA, or United's course of dealing under the contract. Nor could the City's lawyers speak to the economic consequences to United if the Court were to enter a judgment in line with American's interpretation of the AULA, interfering with United's contractual rights and potentially halting the redetermination process that United's January 28, 2025 letter triggered.

Finally, it bears noting that dismissal would not preclude American from pursuing its claims. Rather, American would need to do so in another forum – Illinois state court.

In sum, given United's direct and material interest in the substance of this lawsuit, the unavoidable prejudice to United if the Court were to enter a judgment in American's favor, the City's inability to adequately represent United's interests in this lawsuit, and the fact that American can obtain the judgment it seeks in state court, United is an indispensable party. *U.S. ex rel. Hall v. Tribal Dev. Corp.,* 100 F.3d 476, 479 (7th Cir. 1996). As United and American are not diverse, this case should be dismissed on jurisdictional grounds.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1332, federal courts have original jurisdiction over civil actions when the amount in dispute exceeds $75,000 and there is diversity of citizenship between the parties. 28 U.S.C. § 1332(a)(1). "Although federal diversity jurisdiction provides a neutral forum for lawsuits between parties from different states," this jurisdiction is interpreted "narrowly and require[s] *complete* diversity of citizenship" to be invoked. *Schur v. L.A. Weight Loss Ctrs., Inc,* 577 F.3d 752, 758 (7th Cir. 2009) (emphasis in original). For purposes of assessing subject matter jurisdiction via diversity of citizenship, "a corporation is a citizen of the state where it is incorporated, as well as the state where it has its principal place of business." *Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 126 (N.D. Ill. 2003) (citing 28 U.S.C. § 1332(c)). Unless there exists complete diversity between plaintiffs and defendants, the court has no diversity jurisdiction and, absent some other grounds for finding jurisdiction, the lawsuit must be dismissed. 28 U.S.C. § 1332; Fed. R. Civ. P. 12(h)(3).

## ARGUMENT

**I.     UNITED IS AN INDISPENSABLE PARTY TO THIS LITIGATION.**

If an intervening party would destroy complete diversity in a lawsuit, courts may still exercise supplemental jurisdiction to retain subject matter jurisdiction unless the non-diverse intervening party was indispensable to the dispute. *Woodring v. Culbertson*, 227 F.R.D. 290, 294

(N.D. Ind. 2005). "A party is indispensable if 'there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants.'" *Id.* (quoting *Thomas v. U.S.*, 189 F.3d 662, 667 (7th Cir. 1999)). The Seventh Circuit considers four factors, set forth in Fed. R. Civ. P. Rule 19(b), when evaluating whether a party is indispensable, for purposes of determining diversity jurisdiction:

> (1) the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties"; (2) the extent to which relief can be tailored to lessen or avoid prejudice; (3) the adequacy of a judgment rendered in the person's absence; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for [lack of diversity]."

*Hall*, 100 F.3d at 479 (quoting Fed. R. Civ. P. 19(b)). All four factors weigh strongly in favor of finding that United is an indispensable party. This Court therefore lacks diversity jurisdiction, and this lawsuit should be dismissed.

### A. A Judgment in American's Favor Would Severely Prejudice United.

United has invested significantly in O'Hare, May 5, 2025 Decl. of M. Weithofer ("Weithofer Decl.") ¶ 4, expecting that doing so would translate into additional gates through the gate space redetermination process. Given United's maximum utilization of its gates, under the AULA's terms, United stands to gain additional gates from gate space redetermination. Compl. ¶ 12. Thus, United asked the City to initiate the redetermination process. *Id.* Resolution of this lawsuit in American's favor would deprive United of additional gates at O'Hare, *id.*, and thus would severely prejudice United. *See, e.g.*, *Hall*, 100 F.3d at 479-80 (finding party indispensable where it was a party to the contract at issue in the dispute and would be prejudiced by adverse ruling regarding the contract); *Woodring*, 227 F.R.D. at 294 (finding prejudice to intervenor-insurer where a decision could result in the intervenor being "contractually liable" to one of the parties).

## B. Relief for American Cannot Be Tailored to Avoid Prejudice to United.

The core question in this lawsuit is whether, under the AULA, the City is to proceed with redetermination as United has requested. Delay of redetermination means depriving United of its contractual rights and compromising its economic interests. This consideration, like the first, makes United an indispensable party. *Hall*, 100 F.3d at 480 (affirming finding of an indispensable party, because the dispute was binary—"'either the transactions violate statutory requirements and are void . . . or they comply with the law and are valid'") (quoting *In re United States ex rel. Hall*, 825 F. Supp. 1422, 1431 (D. Minn. 1993)); *see also Burger King Corp. v. Am. Nat. Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 680 (N.D. Ill. 1988) (subtenant was an indispensable party as "[a]ny decision affecting the conditions or validity of the Lease will automatically inhere to the Sublease," affecting subtenant's interests).

## C. No Party to the Litigation Adequately Represents United's Interests.

United's interests are not adequately represented in this lawsuit. To avoid a finding of indispensability, "in the Seventh Circuit, mere similarity of interest will not do; there must be 'an ***identity*** of interest between the absent [party] and the one already a party to the action'" *Burger King Corp.*, 119 F.R.D. at 678 (quoting *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1153 (7th Cir. 1979) (emphasis added)).

Here, the City is differently situated from United, which has separate rights and obligations under the AULA. *See, e.g.*, AULA § 5.4.1 (requiring the City to perform redetermination if a Long-Term Signatory Airline requests it); § 5.4.1(a–b) (requiring the City to calculate each airline's Preferential Use Gate Space based upon each airline's share of Scheduled Departures in the prior year); § 5.6.1 (requiring City to maintain Long-Term Signatory Airlines' Preferential Use Gate Space during Terminal Area Plan construction). As an airline, United has different constituents—its passengers, employees, and shareholders—than the City. The City's interest in

efficiently allocating gate space at the airport aligns with, but is not identical to, United's parallel interest in enforcing its rights under the AULA as part of its long-term investment in O'Hare. Thus, while the City and United share an interest in moving forward with AULA-mandated redetermination, the City does not maintain the requisite identity of interest with United. *Burger King Corp.*, 119 F.R.D. at 678.

Moreover, the City may have different interpretations of and arguments concerning the AULA provisions at issue. *See, e.g.*, AULA § 5.2.4; § 5.3.2; Exhibit D–1.3. Nor could the City meaningfully present evidence on United's intent, its reliance, and its course of dealing under the contract, or on the unparalleled harms that United would suffer under American's interpretation of the contract. United, at bottom, cannot be relegated to the sidelines while the City and American litigate to advance their respective interests, with American seeking an outcome that would impair United's rights and potentially squander its massive investments in O'Hare.

### D. American Can Adequately Pursue Its Interests in Illinois State Court.

If this lawsuit is dismissed for lack of diversity jurisdiction, American could re-file in Illinois state court and argue its case in that forum. Courts routinely hold that where plaintiffs can pursue their claims in state court, dismissal is appropriate. *See, e.g.*, *Elmhurst Consulting*, 219 F.R.D. at 128; *see also Burger King Corp.*, 119 F.R.D. at 680. American would suffer no hardship in bringing its lawsuit in the Richard J. Daley Center, four blocks north of this Courthouse. *See e.g.*, *Woodring*, 227 F.R.D. at 295 (finding intervenor was indispensable and dismissing lawsuit where plaintiff could "simply refile in state court").

## II. UNITED'S INTERVENTION IN THIS MATTER AS AN INDISPENSABLE PARTY DESTROYS DIVERSITY JURISDICTION.

American relies on diversity jurisdiction as its basis for claiming federal jurisdiction over this lawsuit. Compl. ¶ 18 (citing 28 U.S.C. § 1332(a)(1)). This necessitates complete diversity

between all parties. 28 U.S.C. § 1332(a)(1). For purposes of evaluating diversity jurisdiction, courts consider corporations citizens (1) in their place of incorporation; and (2) in their principal place of business. *Elmhurst Consulting*, 219 F.R.D. at 126; 28 U.S.C. § 1332(c)(1).

As United and American are both Delaware corporations, both are citizens of Delaware. Compl. ¶ 15; 2024 United Airlines, Inc. 10-K.[1] Accordingly, United's intervention as an indispensable party adverse to American destroys complete diversity. *See e.g.*, *Burger King Corp.*, 119 F.R.D. at 680 (because subtenant franchisee was an indispensable party to a leasing dispute between franchisor and landowner and defeated diversity with respect to party in adverse position, court dismissed case for lack of diversity jurisdiction). Accordingly, this case must be dismissed under Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, United respectfully requests that the Court grant United's Motion to Dismiss this case for lack of subject matter jurisdiction.

Dated:   Respectfully submitted,

/s/
Gabor Balassa, P.C.
Amarto Bhattacharyya
gbalassa@kirkland.com
amarto.bhattacharyya@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
United States
Telephone: +1 312 862 2000

*Attorneys for United Airlines, Inc.*

---

[1] Available at https://ir.united.com/static-files/137d1550-984b-4f42-a6ae-82db5e856f95.