IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| American Airlines, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> The City of Chicago, *et al*, ) <br> ) <br> Defendants. ) | Case No. 1:25-cv-04874 <br><br> Hon. Judge Joan H. Lefkow |

**REPLY MEMORANDUM IN SUPPORT OF**
**UNITED AIRLINES, INC.'S MOTION TO INTERVENE**

United has a direct and immediate interest in whether gate-space redetermination goes forward at O'Hare. American, United, and other airlines ("Signatory Airlines") agreed with the City on the terms of the Airline Use and Lease Agreement ("AULA") that establishes United's interest here. Attempting to deny United its contractual interest, American asserts positions that contradict the allegations in its Complaint and defy the AULA's terms.

The gist of American's opposition is that "United is a stranger to American's lease and therefore a stranger to American's lawsuit against the City." Mem. in Opp., Dkt. No. 26 ("Opp.") at 1-2. American's own Complaint and the terms of the AULA, however, show otherwise. Despite now claiming that Exhibit 1 to the Complaint is a contract involving "***only the City and American***," *id*. at 5 (emphasis added), and that other airlines' leases are separate, American averred in its Complaint that, in 2018, "American, ***other airlines***, and Defendants signed ***an agreement***—the 'Airline Use and Lease Agreement' (the 'AULA')." Compl. ¶ 5 (emphasis added). The Complaint also recites for four pages that American, United, and other airlines "fiercely negotiated" the terms of a single agreement. *Id.* ¶¶ 5, 21–39. While American's Opposition attempts to portray the AULA modestly, "***[l]ike most leases*** with the same landlord at the same facility—***such as a lease for an apartment*** in a multi-unit building or for a store in a shopping mall," Opp. at 5 (emphasis added), that portrayal is inconsistent with American's statement in its Complaint that "[t]he AULA is ***unlike an ordinary commercial lease***" because it involved "***collective negotiations among airlines*** and the airport authority," Compl. ¶ 22 (emphasis added).

In the AULA, each airline signed onto the exact same terms, which govern the airlines' rights and obligations—not only with respect to the City but also to each other at O'Hare. Compl. Ex. 1, Dkt. 1-1 (American-signed AULA); United Mot. to Intervene, Ex. 1, Dkt. 7-2 (United-signed AULA) (collectively, the "AULA"); Compl. ¶ 5. The City administers the AULA jointly

1

as to all airlines at O'Hare. For instance, the AULA provides that either the City or certain Signatory Airlines like American and United may initiate the redetermination process for all airlines, which the City then administers. AULA § 5.4.1; Compl. ¶ 43. In that process, the City divides up linear frontage at the airport among certain Signatory Airlines and other carriers. AULA §§ 5.4.2, 5.4.5; Compl. ¶ 41. This gate-space redetermination occurs simultaneously for all airlines at O'Hare, based on American, United, and certain other airlines' flight statistics in the preceding calendar year. AULA § 5.4.1; Compl. ¶ 44. Redetermination thus affects all airlines.

As the Complaint acknowledges, it was *United* that exercised its contractual right as a Signatory Airline to initiate the redetermination process that American now seeks to block. *Id.* ¶¶ 3, 7–8, 12, 48, 73, 78, 90 (repeatedly averring that United requested redetermination). Indeed, United is so central to American's lawsuit that the Complaint mentions "United" more than *40 times*, including 12 times in the first four paragraphs. *Id.* ¶¶ 1–8, 12, 23, 25–34, 38, 48, 73, 78, 90.

American even alleges in its Complaint what the *impact to United* will be if the redetermination process goes forward: It "would cause United to gain gate space—and improve its competitive position." *Id.* ¶ 3. If American were successful on its claims for injunctive relief or declaratory judgment, the City would need to halt the redetermination process that is well underway at O'Hare. That would affect *all airlines*, including by depriving United of the gate-space increase it earned under the AULA. United, in short, has as direct and significant an interest as American does in the outcome of this lawsuit concerning the interpretation of the AULA's redetermination provisions. United is anything but a "stranger" to the AULA or this lawsuit.

Beyond misstating United's connection to the issues in this lawsuit, American also misstates the law on intervention. Contrary to American's erroneous assertion that "contractual privity is required" to intervene as matter of right, Opp. at 5-6, intervention turns on "whether the

2

potential intervenor has an interest" in the "issues to be resolved by the litigation," and whether there is a "potential impairment, as a practical matter, of that interest by the disposition of the action." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321–22 (7th Cir. 1995). United has an unequivocal contractual interest in the "issue" here—*i.e.*, whether redetermination can proceed in 2025. While American stands to lose four gates, United stands to gain gates. Compl. ¶ 12. United has a protectable interest that this litigation "may as a practical matter impair," Fed. R. Civ. P. 24(a)(2), but also an interest that unquestionably **would** be impaired if American blocks the gate-space redetermination from going forward. United's motion to intervene should be granted.[1]

## ARGUMENT

For intervention, "[t]he rule is straightforward[.]" *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020). Where, as here, a motion is timely made, a court "*must* permit intervention," *id.* (emphasis in original), if (1) "the moving party has an interest **relating to** the property or transaction at issue in the litigation" and (2) "that interest **may, as a practical matter, be impaired or impeded** by disposition of the case." *Id.* (emphasis added); *see also* Fed. R. Civ. P. 24(a). A proposed intervenor who satisfies these elements "is *entitled* to intervene" unless existing parties adequately represent its interests. *Driftless*, 969 F.3d at 746 (emphasis in original). There can be no serious question that United has an interest "relating to" the subject of this lawsuit—whether gate-space redetermination should go forward in 2025. Nor is there any question that United's interest in redetermination "may, as a practical matter, be impaired"—indeed, it **will** be impaired—if American prevails in the litigation. American's own Complaint and the terms of the AULA show both requirements are manifestly satisfied here.

---

[1] American suggests United's intervention motion was calculated to divest this Court of jurisdiction. Opp at 2. Not so. United has a material interest in protecting its interests in this dispute. For full transparency, United attached a draft motion to dismiss on the potential implications of its intervention.

3

To start, American seeks to impede the City's redetermination process that affects all airlines at O'Hare. In doing so, American threatens United's bargained-for right to obtain additional gate space through redetermination. Given United's compelling interest "relating to" redetermination, and given that the outcome of this lawsuit "may as a practical matter impair" this interest, United has a right to intervene under Rule 24(a)(2). *Driftless*, 969 F.3d at 746. American does not and cannot dispute these propositions nor can it show that the City will adequately represent United's interests. Instead, American invents new standards for intervention as of right that contradict Rule 24's plain text and controlling caselaw in this Circuit. American's arguments should be rejected, and United should be allowed to intervene as of right.

I. **UNITED HAS A LEGALLY PROTECTED INTEREST IN REDETERMINATION.**

American's principal argument is that "***contractual privity is required*** to intervene as of right." Opp. at 6 (emphasis added). Not so. Courts do not impose any such brightline rules to deny intervention, but rather construe Rule 24 "liberally" and "resolve doubts in favor of allowing intervention." *Michigan v. U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010); *see also* 6 Moore's Federal Practice – Civil § 24.03[1][a] (3d ed. 2020). A right to intervene turns on "the ***issues*** to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Reich*, 64 F.3d at 322 (emphasis added). Whether a proposed intervenor has a sufficient "interest" to support intervention as of right should be "broadly construed." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982) (courts "encourag[e] liberality in the definition of an interest").

Intervention should be granted where the movant's interest in its contract would be adversely affected by the litigation, even if the litigation does not directly concern the intervenor's contract. For example, in *Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1257-58 (7th Cir. 1983), plaintiff sued defendant for specific performance on a real estate contract. The

4

proposed intervenor was not a party to that real estate contract but held a security interest in the sale proceeds it had purchased from plaintiff's lender. *Id.* The Seventh Circuit reversed denial of intervention because the movant's security interest was "'sufficiently direct and substantial' to support intervention of right." *Id.* at 1259 (internal marks omitted); *see also Atain Specialty Ins. Co. v. Hodge*, 2022 WL 4367358, at *1 (S.D. Ill. Sept. 21, 2022) (court granted broker's motion to intervene in insurer's declaratory judgment claim against insured regarding scope of insurance coverage, though broker was not a party to the insurance policy). Indeed, even if American were correct that the AULA is akin to the lease of a "store in a shopping mall," Opp. at 5, a lessee at a shopping mall *can* intervene as of right where its own lease rights are threatened by litigation regarding a transaction between the landlord and another store. *See Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 365 (D.N.J. 1998). United's interest in this lawsuit is even more direct than in these cases that allowed intervention. A ruling in American's favor would block the redetermination process that United initiated and through which it stands to gain gate space under the exact AULA terms that American asks this Court to interpret.

American cites cases in which the proposed intervenor was not a party to the contract at issue. But the airlines here have signed on to the same contract. Moreover, none of the cases American cites states that contractual privity is dispositive. *See, e.g.*, *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (cited in Opp. at 6) ("Rigaud is not a party to the Mt. Hawley insurance policy *and* has no legally protectable interest in that insurance policy" (emphasis added)). Further, in each case American cites, and unlike the case at bar, the intervenor had no direct interest in the subject matter of the litigation. *Id.* at 1310–11 (tort victims seeking to intervene in insurer's declaratory judgment lawsuit against tortfeasor, to ensure they had "pool or fund from which to recover [their] damages"); *see also Lloyd's Syndicate 3624 v. Biological Res.*

5

*Ctr. of Ill., LLC*, 2018 WL 3861559, at *3 (N.D. Ill. Aug. 14, 2018) (tort claimants seeking to intervene because they have "some outstanding monetary claim against one of the original parties"); *Meridian Homes Corp.*, 683 F.2d at 204 (indirect shareholders of joint venture had only "an indirect interest to the extent that their rights to profits may be affected" by joint venture's dissolution proceeding); *Rosebud Coal Sales Co. v. Andrus*, 644 F.2d 849, 850-51 (10th Cir. 1981) (private landlord of coal seller seeking to intervene in coal seller's litigation with U.S. government over statutory lease rates on separate federal lands, where private lease included some elements of statutory lease rates); *Fuel Avenue, Inc. v. Nat'l Brokers of Am., Inc.*, 329 F.R.D. 461, 464 (S.D. Fla. 2019) (third-party recipient of confidential information seeking to intervene in lawsuit between parties to confidentiality agreement, to assert unrelated claims against plaintiff); *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) (environmental group seeking to intervene to present what it "believes the public policy respecting water use ought to be"). Here, by contrast, United has a direct and immediate interest in the outcome of this litigation, which will decide whether gate-space redetermination for all airlines proceeds and whether United receives the gates it rightfully earned under the AULA.

## II. UNITED'S INTEREST IN REDETERMINATION WOULD BE IMPAIRED BY A DECISION IN THIS CASE.

American next argues that United's interests would not be impaired by the disposition of this action, because United would "remain free to pursue any claim against one of the parties regardless of the outcome." Opp. at 10. But Rule 24 does not turn on whether the lawsuit would have a legally preclusive effect on the movant. Rather, the standard is whether disposition of the lawsuit "may, as a practical matter, impair or impede the movant's ability to protect that interest." Fed. R. Civ. P. 24(a)(2). The cases American cites underscore that the Rule was amended to add this "practical" approach, "repudiated [the] narrow approach" that had required a *res judicata*

6

effect, and was "obviously designed to liberalize the right to intervene." *Nuesse v. Camp*, 385 F.2d 694, 701–02 (D.C. Cir. 1967) (cited in Opp. at 10). Indeed, in *Nuesse*, the court reversed the district court's denial of a motion to intervene, finding "the opportunity to raise the same issue in another forum was no bar to intervention as of right"; it was enough that "a decision by the District Court here, the first judicial treatment of this question, would receive great weight, whether the question arose again in this jurisdiction or in the federal court in Wisconsin." *Id.*

Here, a disposition of this lawsuit in American's favor would materially impair United's interests by stopping the redetermination United has requested from going forward. Further, this Court's resolution of American's arguments concerning the interpretation of sections 5.2.4 and 5.3.2 of the AULA would certainly be given "great weight" if United were to raise the **exact same issue** in another lawsuit against the City. *Id.* Moreover, if a subsequent court were to disagree with a ruling for American by this Court, that outcome would produce **directly** "conflicting results"—one barring the City from proceeding with redetermination and the other requiring it— a prospect that further supports United's intervention here. *Atain*, 2022 WL 4367358, at *2 (granting intervention because "there is consistency in resolving these issues in a single proceeding" while "denial of intervention could create conflicting results").

None of the cases American cites concern a putative intervenor's interest in the interpretation of the same contractual language that the intervenor agreed to with the defendant in the lawsuit. Rather, American resorts to citing cases involving litigation which would have no effect on the intervenors' separate and independent claims. *See, e.g.*, *Lloyd's Syndicate 3624*, 2018 WL 3861559, at *4 (intervention denied where putative intervenor was "free to pursue" tort claim without intervening in declaratory judgment action regarding scope of tortfeasor's insurance coverage); *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) (federal court's interpretation of

7

state law on a matter unrelated to the intervenor would not affect his ability to advance different arguments regarding interpretation of that law in state court).

American also cites to other cases that support United's motion in which courts **permitted** intervention because the court's ruling would impair the intervenor's interest in any subsequent lawsuit. *See, e.g.*, *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 925 (N.D. Ill. 2012) (granting intervention motion because movant's "interest in upholding the constitutionality of [Defense of Marriage Act] in this and subsequent proceedings plainly would be impaired by a ruling in favor of Plaintiffs"); *Nuesse*, 385 F.2d at 701. These cases support United's intervention, given this lawsuit's direct and material impact on United's contractual interests.

### III. THE CITY DOES NOT ADEQUATELY REPRESENT UNITED'S INTERESTS.

The Seventh Circuit applies a "three-tiered methodology for evaluating adequacy of representation under Rule 24(a)(2)." *Driftless*, 969 F.3d at 747. The default standard is "a liberal one" requiring a "minimal" showing "that representation of [a party's] interest 'may be' inadequate." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019). This default standard is satisfied here because, as in *Driftless*, United and the City do not have the same interests: The City administers the AULA—it does not represent airlines.

American erroneously asserts that an intermediate standard applies, requiring United to meet a slightly higher burden of showing "some conflict" with the City to rebut the presumption of adequate representation. *Driftless*, 969 F.3d at 747. American fails to meet its burden of establishing the Court should depart from the default standard, which requires showing, following a "discerning comparison of interests," that "the interest of the absentee is **identical** to that of an existing party." *Id.* at 747–48 (emphasis added). Instead of attempting to show that United and the City's interests are "identical," American summarily asserts that both want the same outcome here. *See* Opp. at 11. The intermediate standard, however, does not apply simply because movant

8

and defendant "share[] the same goal … in the brute sense that they both want the case dismissed." *Driftless*, 969 F.3d at 748 (internal marks omitted). "If that's truly how the presumption works, then the default standard will rarely apply. That's not how the presumption works." *Id.*

While United seeks to intervene on the same side of the "v." as the City in this lawsuit, the City sits across the table from United and the other airlines in administering the AULA. The City's role as administrator in no way means its interests are "identical" to the airlines at O'Hare—particularly on issues, as here, where airlines have opposing interests.[2] Plus, any accommodation the City might make on redetermination timing to resolve American's lawsuit would prejudice United, further warranting application of the default standard. *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (default rule applies when a potential intervenor "can cite potential conflict of interest in future settlement negotiations").

American tries to distinguish *Driftless* as applying only to lawsuits involving regulators. To be sure, *Driftless* emphasizes that "the Commission **regulates** the transmission companies, it does not **advocate for** them or represent their interests." 969 F.3d at 748 (italics in original). But the court emphasized these different roles to underscore the distinction between administrators and advocates. Here, the City is not an advocate for United; its "obligations are to the general public," *id.*, and to the Federal Aviation Administration in administering O'Hare, not to United. *See, e.g.*, 14 CFR § 158.19 (requiring public agencies, such as Chicago Department of Aviation, to submit a "competition plan" to the FAA).[3] The City and United's interests are "importantly different"—United has "obligations to [its] investors," as well as to its passengers, employees and other

---

[2] Indeed, American argues elsewhere that United is "free to initiate an action against the City" to enforce its contractual rights, Opp. at 10, further demonstrating United and the City do not share identical interests.

[3] Failure to comply with a competition plan and related grant assurances to the FAA may result in penalties on the City. *See Southwest Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 273 (D.C. Cir. 2016).

9

stakeholders, and will "finance" and "operate" out of its assigned gate space at O'Hare, having made "substantial sunk and anticipated future investments." *Driftless*, 969 F.3d at 748.

The cases American cites, which apply the intermediate standard, show how precisely "identical" the interests must be to justify application of that standard. *See, e.g.*, *T.K. ex rel. Leshore v. ByteDance Tech. Co.*, 2021 WL 1172767, at *6 (N.D. Ill. Mar. 29, 2021) (objector to class settlement had identical interest to class representative to "make whole" the settlement class). And, while American cites the district court's use of the intermediate standard in *Bost v. Ill. State Bd. of Elections*, 2022 WL 6750940, at *5-6 (N.D. Ill. Oct. 11, 2022), American fails to mention that the Seventh Circuit on appeal held the trial court had erred in not applying the "lenient default standard" because the government commission and private companies "did not have 'identical' interests." 75 F.4th 682, 688-89 (7th Cir. 2023). The other cases American cites are inapposite because they involved an intervenor that "had ample opportunity to be heard at the district court and declined to do so," *Public Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1113-14 (10th Cir. 2017), or the federal government seeking to make identical statutory interpretation arguments as a plaintiff, though the statute's validity was not at stake. *See Haymarket DuPage, LLC v. Vill. of Itasca*, 2025 WL 975668, at *6 (N.D. Ill. Mar. 31, 2025). That said, no matter which standard the Court applies, given United and the City's different roles and interests with respect to the distribution of gate space, United must have an opportunity to participate in this lawsuit.

## CONCLUSION

For the foregoing reasons, United respectfully requests that the Court grant United's request to intervene as of right in this lawsuit.

Dated: May 28, 2025

Respectfully submitted,

*/s/ Gabor Balassa, P.C.*

Gabor Balassa, P.C.
Amarto Bhattacharyya
gbalassa@kirkland.com
amarto.bhattacharyya@kirkland.com
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
United States
Telephone: +1 312 862 2000

*Attorneys for United Airlines, Inc.*

## CERTIFICATE OF SERVICE

      I, Gabor Balassa, an attorney, certify that on this date, May 28, 2025, I caused a true and correct copy of the foregoing **UNITED AIRLINES, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** to be electronically filed with the Clerk of the Court using CM/ECF, which will serve on all counsel of record.

                                              */s/ Gabor Balassa, P.C.*
                                              Gabor Balassa, P.C.