IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO et al., <br><br> Defendants. | Case No. 25-cv-4874 <br><br> Hon. Judge Joan H. Lefkow |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

Defendants the City of Chicago and Michael J. McMurray, in his official capacity as Commissioner of the Chicago Department of Aviation ("CDA") (together, the "City"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by American Airlines, Inc. ("American").

## INTRODUCTION

In 2018, the City and its airline partners at O'Hare International Airport ("O'Hare") reached a landmark agreement that provides for significant investment in capital improvements and continued growth at O'Hare. Under this 2018 Airline Use and Lease Agreement (the "AULA"), airlines may be assigned gate space on a "preferential use" basis; however, such assignments are not permanent. Instead, the AULA provides for an annual gate space redetermination process whereby airlines will be assigned space based, in significant part, on the extent of their operations in the previous year.

In January of this year, United Airlines, Inc. ("United") requested a redetermination of gate space. Consistent with the AULA, the City initiated the redetermination process. American disputes whether all conditions necessary for a gate space redetermination have been met and filed this lawsuit alleging breach of the AULA.

Although American named only the City as a defendant in this lawsuit, American and the City are not the only parties with an interest in the redetermination. Other airlines that have signed the AULA have an interest—including United, which requested the redetermination and moved to intervene in this lawsuit. United is a necessary party that must be joined in this action, but cannot be joined because its presence would destroy diversity jurisdiction. Therefore, this action must be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(7).

Further, if the Court does not dismiss the entire case, the Court should dismiss Counts II and III pursuant to Rule 12(b)(6) for failure to state a claim because these counts do not allege

independent causes of action. Finally, the Court should dismiss Commissioner McMurray from this lawsuit because the claims against him are duplicative of those against the City.

## FACTUAL BACKGROUND

The City is the owner and operator of O'Hare, one of the busiest airports in the world. *See* Compl. ¶ 1, Dkt. 1. The rights and obligations of the City and the many airlines operating at O'Hare are governed by a unique contract known as an "airline use and lease agreement." This contract is "unlike an ordinary commercial lease." *Id.* ¶ 22. "Due to the federal regulatory scheme governing airports," airline use and lease agreements "involve *collective negotiations* among airlines and the airport authority." *Id.* (emphasis added). The result is *one* agreement for the use and lease of airport facilities, to be executed by each airline that desires to become a signatory. *See id.* ¶ 5 (stating "American, other airlines, and Defendants signed *an* agreement," and describing the AULA in the singular (emphasis added)).

The AULA at the heart of this dispute was "fiercely negotiated" by the City and multiple airlines over a multi-year period. *Id.* ¶¶ 5, 21; *see also id.* ¶ 29 (describing "[e]xtensive negotiations" involving multiple airlines). Airlines that have signed the AULA are referred to as "Signatory Airlines" and are either "Long-Term Signatory Airlines," committing to O'Hare through the year 2033, or "Short-Term Signatory Airlines," committing for a shorter period. Compl., Ex. 1 Pt. 1 at 24, 29, Dkt. 1-1 (AULA § 1.1 (Definitions)). There are currently 21 Long-Term Signatory Airlines (including American and United) and 27 Short-Term Signatory Airlines. Each signed a virtually identical contract with the City. *Compare* Compl., Ex. 1 Pt. 1, Dkt. 1-1 (American AULA), *with* Decl. of G. Balassa, Ex. 1 Pt. 1, Dkt. 7-2 (United AULA).

The AULA governs the assignment of all gate space at O'Hare. Gate space may be either "Common Use Gate Space," controlled by the City and made available to all airlines subject to

agreed-upon protocols, or "Preferential Use Gate Space," assigned specifically to one Long-Term Signatory Airline. Compl., Ex. 1 Pt. 1 at 16, 27, Dkt. 1-1 (AULA § 1.1 (Definitions)); *id.* at 49 (AULA § 5.1). Gate space assignments as of certain milestones under the AULA are shown on Exhibit D to the AULA. Compl., Ex. 1 Pt. 2 at 94-97, Dkt. 1-2 (AULA Ex. D). Unsurprisingly, given the "competitive aviation market[]" in Chicago, Preferential Use Gate Space is in high demand. Compl. ¶ 1, Dkt. 1; *see id.* ¶¶ 23-31 (describing advantage of having more gates and competition for assignment of "contested gates").

Preferential Use Gate Space assignments are not permanent; rather, the AULA "contemplates regular redeterminations of gate space at O'Hare." *Id.* ¶ 9. Basically, the City must conduct a redetermination of gate space when either (a) the City determines that the amount or locations of Common Use Gate Space should be changed, or (b) a Long-Term Signatory Airline requests additional Preferential Use Gate Space that would be available to it if a redetermination takes place.[1] *Id.* ¶ 43. The City then determines each Long-Term Signatory Airline's "share" of Preferential Use Gate Space based on operations in the prior year and, after considering additional factors set forth in the AULA, assigns the amount and location of Preferential Use Gate Space to each Long-Term Signatory Airline. Compl., Ex. 1 Pt. 1 at 52-53, Dkt. 1-1 (AULA § 5.4.1 to -.2). Thus, although an individual Long-Term Signatory Airline may set the redetermination process in motion, that process impacts all Long-Term Signatory Airlines.

Pursuant to these provisions, in late January 2025, United sent the City a letter requesting a redetermination of gate space. Decl. of G. Balassa, Ex. 2, United Letter, Dkt. 7-5. The City then sent the Signatory Airlines a letter informing them of United's request and the forthcoming

---

[1] Whether other conditions for a gate space redetermination to occur in 2025 have been met is of course central to American's complaint. Those conditions are not relevant to the legal issues presented by the City's motion, so the City does not address them here.

redetermination process. Compl. ¶ 48, Dkt. 1. American objects to the redetermination process and filed this lawsuit in response. United has moved to intervene, claiming an interest in its right to the gate space redetermination and this lawsuit. Mem. in Supp. of Mot. to Intervene 6, Dkt. 7 ("Intervention Mem."). American opposes intervention, and United's motion remains pending.

## STANDARD OF REVIEW

"A motion under Rule 12(b)(7) seeks dismissal based on the failure to join a necessary party as required by Federal Rule of Civil Procedure 19." *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013). In evaluating a Rule 12(b)(7) motion, the court must accept the complaint's factual allegations as true and draw reasonable inferences in the plaintiff's favor. *Line Constr. Benefit Fund v. Asomeo Env't Restoration Indus., LLC*, 688 F. Supp. 3d 727, 731 (N.D. Ill. 2023). "[A] court may consider matters outside of the pleadings to resolve factual questions pertaining to . . . indispensable parties." *Deb v. Sirva, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 848 (N.D. Ill. 2008). The motion should be granted if "it appears beyond doubt that the [plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted). While the court must accept the complaint's factual allegations as true, those allegations "must be enough to raise a right to relief above the speculative level." *Line Constr.*, 688 F. Supp. 3d at 731 (citation omitted).

## ARGUMENT

**I. AMERICAN'S LAWSUIT SHOULD BE DISMISSED FOR FAILURE TO JOIN A REQUIRED PARTY.**

The purpose of Rule 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). The Rule 19 analysis is a two-step process that

4

requires first determining, under Rule 19(a), whether an absent party is one who should be joined if feasible. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). If the absent party should be joined but cannot be joined, the court then considers the factors set forth in Rule 19(b) to determine whether the litigation should proceed even without the absent party. *Id.* If "in equity and good conscience" the action cannot proceed, dismissal under Rule 12(b)(7) is appropriate. *Evergreen Park Nursing & Convalescent Home, Inc. v. Am. Equitable Assurance Co.*, 417 F.2d 1113, 1115-16 (7th Cir. 1969); *Davis*, 268 F.3d at 481.

United, as the Long-Term Signatory Airline that requested the gate space redetermination and stands to gain in the redetermination, is a necessary party under Rule 19(a). But United's joinder in this lawsuit would destroy diversity, depriving this Court of jurisdiction. Due to the prejudice to the City and United if the action proceeds without United, the substantial risk to the City of facing multiple lawsuits and conflicting obligations, the inadequacy of any judgment in United's absence, and the adequate remedy available to American in state court, the Rule 19(b) factors weigh against proceeding without United, and this action should be dismissed.

The City acknowledges that United may not be the only absent party indispensable to this action. Other Long-Term Signatory Airlines stand to gain or lose Preferential Use Gate Space in the redetermination. However, United is the only absent party whose participation the Court must consider at this time, because although this lawsuit was filed over two months ago, United is the only party that has moved to intervene. *See Davis*, 268 F.3d at 483 ("[U]nder Rule 19(a) it is the absent party that typically must claim . . . an interest."). Further, because United's participation alone would require dismissal of this action, the Court "need not address" whether the participation of other Long-Term Signatory Airlines is necessary or would require the same result. *See Bahlenhorst v. Vrdolyak*, No. 08 C 5475, 2009 WL 65180, at *4 (N.D. Ill. Jan. 9, 2009).

### A. United is a party required to be joined in this action.

United is an absent party required to be joined under Rule 19. Under Rule 19(a), an absent party may be a required party in two situations: if (A) the court cannot accord complete relief among existing parties without the absent party; or (B) the absent party "claims an interest relating to the subject of the action," and disposing of the action without the absent party may either "as a practical matter impair or impede [the absent party's] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)-(B).

Here, United is a required party based on its claimed interest in the subject of the action. United requested the gate space redetermination that American challenges in this lawsuit, and United has an interest in the redetermination proceeding. Disposing of this action without United would impair United's ability to protect its interest, and would subject the City to a substantial risk of incurring inconsistent obligations. United is therefore a required party under Rule 19(a)(1)(B).

#### 1. United claims an interest relating to the subject of this action.

The fact that United "claims an interest relating to the subject of [this] action" cannot be in serious dispute. Fed. R. Civ. P. 19(a)(1)(B). United moved to intervene in this lawsuit, citing its "contractual right" to request the redetermination and its interest in securing the additional Preferential Use Gate Space it will receive under the redetermination. Intervention Mem. 6, Dkt. 7. American's complaint shows United's interest on its face. The complaint recounts how United requested a redetermination of gate space under the AULA, initiating a sequence of events that led to American filing this lawsuit. Compl. ¶¶ 3, 7-8, 12, 48, Dkt. 1. American asserts that if the redetermination goes forward, United will gain Preferential Use Gate Space, and American will lose Preferential Use Gate Space. *Id.* ¶¶ 3, 12, 73. American asks the Court to interpret the AULA to forbid "the Gate Redetermination requested by United" and to enjoin the City from proceeding.

6

*Id.* ¶¶ 3, 78; *id.* at Prayer for Relief ¶ B. "Although [American] has not named [United] as a party to this case, [its] complaint involves [United] and makes substantial requests for relief that directly involve the interests of [United]." *Sharpe v. Jefferson Distrib. Co.*, No. 94 C 7523, 1996 WL 31177, at *7 (N.D. Ill. Jan. 24, 1996).

American may argue that United cannot claim an interest here because it is not technically a party to American's lease. Mem. in Opp'n to Mot. to Intervene 4-8, Dkt. 26 ("Intervention Opp'n"). But contractual privity is not necessary for an absentee to be a required party under Rule 19; rather, Rule 19 "requires only that [the absent party] have an interest '*relating* to the *subject matter of* the action.'" *Burger King Corp. v. Am. Nat'l Bank & Tr. Co.*, 119 F.R.D. 672, 676 (N.D. Ill. 1988) (quoting Rule 19). An absent party may meet this requirement even when it is "not a party to the [underlying contract] and may not have any rights pursuant to it." *Id.* at 677; *see also Hashop v. Fed. Home Loan Mortg. Corp.*, 171 F.R.D. 208, 212 (N.D. Ill. 1997) ("The protection of contract interests of third parties has frequently been recognized as a determinative factor in the Rule 19(a) inquiry."). For example, in *Burger King*, the plaintiff's subtenant had an interest in the dispute between the plaintiff and its landlord because, although the subtenant was not a party to the prime lease, the subtenant's rights under the sublease related to the subject matter of the dispute. 119 F.R.D. at 677; *see also, e.g.*, *Evergreen*, 417 F.2d at 1115 (absent insurers with separate contracts creating separate obligations were necessary parties because obligations under one contract would be affected by others).

Although American and the other signatories to the AULA technically signed separate documents, by making United a central character in its complaint, American concedes that United's actions under the AULA implicate American's interest. American cannot turn around and

7

ask the Court to ignore what it has pled. *Line Constr.,* 688 F. Supp. 3d at 731 (requiring court to accept the complaint's factual allegations as true on a Rule 12(b)(7) motion).

> **2. Disposing of this action without United's participation will, as a practical matter, impair or impede its ability to protect its interest.**

United will be prevented from protecting its interest if this lawsuit proceeds without its participation. Fed. R. Civ. P. 19(a)(1)(B)(i). Rule 19 "looks to whether there will be impairment of the person's interest *in a practical sense* if an action proceeds in the person's absence." *Eljer Indus. v. Aetna Cas. & Sur. Co.*, No. 93 C 4320, 1994 U.S. Dist. LEXIS 6167, at *18 (N.D. Ill. May 9, 1994) (provided in Attachment 1 to this memorandum). American, by its own account, seeks to stop the gate space redetermination that United requested under the AULA. Compl. ¶¶ 3, 78, Dkt. 1. If United is not a party to this lawsuit, United's ability to protect its interest in the redetermination will be impaired. While American may argue that United has signed a separate AULA and can enforce its rights under that contract, Intervention Opp'n 10-11, Dkt. 26, such argument would ignore the zero-sum nature of this dispute: either the redetermination proceeds, or it does not.[2] The identical AULAs negotiated and signed by all of the signatory airlines including United and American do not allow the redetermination to proceed for one airline but not the others, because all airlines are competing for the same finite amount of gate space at O'Hare. *See* Compl. ¶¶ 3, 94-95, Dkt. 1 (asserting the redetermination will allow United to "improve its competitive position" at American's expense).

Further, United's ability to protect its interest will be impaired because American asks the Court to interpret the redetermination provisions of the AULA, and any court considering those provisions in the future may be "inclined, albeit not required, to adopt an interpretation similar to

---

[2] Such argument would also highlight that proceeding without United will leave the City subject to a substantial risk of incurring inconsistent obligations. *See infra* Part I.A.3.

that which this court decides is correct." *Eljer*, 1994 U.S. Dist. LEXIS 6167, at *18; *see Schmidt v. E.N. Maisel & Assocs.*, 105 F.R.D. 157, 160 (N.D. Ill. 1985) (finding that absent business partners would be prejudiced by interpretation of partnership agreement because interpretation "would carry great weight in any subsequent proceedings"). United, then, "will have lost the opportunity to present [its] arguments regarding the interpretation of [the AULA] at the time when they would be most forceful, i.e., when the interpretation of the contract terms was first litigated." *Eljer*, 1994 U.S. Dist. LEXIS 6167, at *18. This is sufficient to show prejudice to United's ability to protect its interest; no showing that United will be "legally bound by *res judicata* or collateral estoppel" is required. *Gottlieb v. Vaicek*, 69 F.R.D. 672, 675 (N.D. Ill. 1975).

Finally, the fact that the City is defending the gate space redetermination does not mean the City adequately represents United's interest and does not avoid the conclusion that United is a required party. The potential for adequate representation by an existing party does not impact the Rule 19(a) inquiry or remove the need for joinder where there is also a risk that the third party's absence will leave an existing party subject to inconsistent obligations, as is the case here. *Burger King*, 119 F.R.D. at 678 n.5; *see infra* Part I.A.3. Additionally, "mere similarity of interest will not do" to obviate the need for joinder; identity of interest is required. *Burger King*, 119 F.R.D. at 678 (citing *Hansen v. Peoples Bank of Bloomington*, 594 F.2d 1149, 1153 (7th Cir. 1979)). The interests of the City and United "simply are not identical." *Id.* The City's interest is in the proper interpretation and administration of the AULA, while—as American acknowledges—United has a narrow and specific interest in securing more gate space for United. *See* Compl. ¶¶ 2-3, Dkt. 1. United's interest may be protected if the City prevails in this lawsuit. But if American prevails—whether in full or, as United suggests, through some accommodation in settlement, Reply Mem. in Supp. of Mot. to Intervene 9, Dkt. 29—United "will be adversely affected without having

9

participated in this suit. This is precisely why joinder *is* necessary in this case." *Chaudry v. Musleh*, No. 17 C 1813, 2017 WL 3872462, at *4 (N.D. Ill. Sept. 5, 2017).

### 3. Disposing of the action without United's participation will subject the City to a substantial risk of multiple, inconsistent obligations.

United's joinder is also required to protect the City, because United's interest is such that proceeding without United will leave the City subject to a substantial risk of incurring inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). American has previously asserted that "United remains free to initiate an action against the City," Intervention Opp'n 10-11, Dkt. 26, and United has similarly indicated it may be "forc[ed]" to "pursue its own declaratory judgment action against American and the City" if it cannot participate in this lawsuit to protect its interests, Intervention Mem. 7-8, Dkt. 7. Indeed, given United's efforts to protect its interests thus far, if this Court enjoins the redetermination, "[i]t would frankly be astonishing" if United—"not having been a party to [this lawsuit], and hence not bound by its outcome"—would not then file its own lawsuit to enjoin the City from stopping the redetermination. *Teamster Local Union No. 714 v. GES Exposition Servs., Inc.*, 494 F. Supp. 2d 970, 974 (N.D. Ill. 2007); *see Martin Implement Sales, Inc. v. Ford New Holland, Inc.*, No. 87 C 8883, 1989 WL 31031, at *3 (N.D. Ill. Mar. 29, 1989) (noting that decision in plaintiffs' favor could result in "danger" of absent party obtaining competing injunction). This creates the substantial and troubling possibility that American and United will secure conflicting court rulings enjoining the redetermination and requiring it to move forward, leaving the City "unable to comply with one court's order without breaching [the other] court's order concerning the same incident." *Grubb & Ellis Co. v. Huntington Hoffman, LLC*, No. 10-cv-5068, 2010 WL 4962846, at *3 (N.D. Ill. Dec. 1, 2010) (citation omitted). Such a "predicament would present a perfect example" of the type of inconsistent obligations Rule 19 is designed to avoid. *Teamster Local*, 494 F. Supp. 2d at 974.

10

This case is akin to those where joinder is appropriate because conflicting court orders might require an employer to assign the same work to two unions at the same time, *see id.*, or reach "contradictory conclusions" about ownership of a property interest, *see Moore*, 901 F.2d at 1448, or award the same exclusive territory to two different dealers, *see Martin*, 1989 WL 31031, at *3. This is not a case where the City faces only multiple potential adjudications based on separate and independent contracts. *See Davis*, 268 F.3d at 484-85 (absent investor was not a necessary party where defendant made separate offers of stock to plaintiff and absent investor); *Grubb*, 2010 WL 4962846, at *4 (absent real estate broker was not a necessary party where defendant could be ordered to pay separate commissions to plaintiff and absent broker). Here, American's and United's interpretations of the AULA are mutually exclusive, creating the substantial and concerning possibility the City will face inconsistent obligations.

B. **United cannot be joined without destroying diversity, and the action cannot in equity and good conscience proceed without United.**

Although United is a party that should be joined if feasible, joining United is not feasible because it would destroy this Court's subject matter jurisdiction. *See* Compl. ¶ 18, Dkt. 1 (invoking diversity jurisdiction). "American is a corporation organized and existing under the laws of the State of Delaware." *Id.* ¶ 15. United is also a Delaware corporation. Mot. to Intervene, Ex. 4, Proposed Mot. to Dismiss 8, Dkt. 7-7 ("United Mot. to Dismiss"); 2024 United Airlines 10-K at 1.[3] United would be most appropriately joined as a defendant in this case, given its interest in defending the gate space redetermination American challenges. This would place American and United, two citizens of the same state, on opposite sides of the "v."—destroying diversity. *See* 28

---

[3] *Available at* https://ir.united.com/static-files/137d1550-984b-4f42-a6ae-82db5e856f95; *see Sharbaugh v. First Am. Title Ins. Co.*, No. 07 C 2628, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (court may take judicial notice of portions of SEC filings that are not in dispute).

11

U.S.C. § 1332(c)(1) (corporation is a citizen of every State in which it has been incorporated); *Big Shoulders Capital LLC v. San Luis & Rio Grande R.R.*, 13 F.4th 560, 571 (7th Cir. 2021) (diversity jurisdiction requires that "no defendant . . . share the same state citizenship as any plaintiff").[4]

Since joinder is not feasible without depriving the Court of subject matter jurisdiction, the Court must consider the four factors listed in Rule 19(b) to determine "whether in equity and good conscience the action should proceed in [United's] absence or should be dismissed." *Evergreen*, 417 F.2d at 1115-16. "Rule 19(b) provides for a pragmatic weighing of the relevant factors." *Burger King*, 119 F.R.D. at 679. Here, the factors weigh in favor of dismissal.

First, a judgment rendered in United's absence would prejudice the City and United. *See* Fed. R. Civ. P. 19(b)(1). This factor is the "counterpart" to the required party determination in Rule 19(a)(1)(B). *Burger King*, 119 F.R.D. at 679. As explained above, disposing of this action without United would subject the City to a substantial risk of inconsistent obligations and may impair United's ability to protect its interests, *supra* Parts I.A.2-.3; in other words, it would prejudice the City and United. *See Eljer*, 1994 U.S. Dist. LEXIS 6167, at *21-22 (weighing potential for prejudice due to inconsistent obligations when considering first Rule 19(b) factor).

Second, there is no way to shape the judgment to lessen or avoid that prejudice. *See* Fed. R. Civ. P. 19(b)(2). American seeks a declaration that the gate space redetermination may not occur until 2027 and an injunction prohibiting the City from initiating a redetermination prior to 2027. Compl. at Prayer for Relief ¶¶ A-C, Dkt. 1. There is simply no way for this relief to affect

---

[4] While United is most appropriately aligned as a defendant, even if the Court were to align United as a plaintiff, diversity jurisdiction would still be destroyed because both the City and United are citizens of Illinois. *See* Compl. ¶ 16, Dkt. 1 (City is a citizen of Illinois); 2024 United Airlines 10-K at 1 (Principal Executive Office location in Chicago, Illinois); *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021) (corporation is a citizen of its principal place of business, which is its "nerve center"); *Big Shoulders*, 13 F.4th at 571 (diversity jurisdiction requires that "no defendant . . . share the same state citizenship as any plaintiff").

only American and the City and not other Long-Term Signatory Airlines, including United. This factor weighs in favor of dismissal. *See Burger King*, 119 F.R.D. at 680 (noting that although court might award plaintiff damages, it "simply could not avoid the prejudicial effect" of its interpretation of the lease on the absent subtenant's sublease, weighing in favor of dismissal); *Schmidt*, 105 F.R.D. at 160 ("The court does not see . . . how it could shape the injunctive relief sought by plaintiff to minimize the effect on [absent parties].").

Third, a judgment rendered without United would not be adequate. Fed. R. Civ. P. 19(b)(3). "Adequacy in this context refers to the 'public stake in settling disputes by wholes, whenever possible.'" *Williams v. Planet Fitness, Inc.*, No. 20 CV 3335, 2021 WL 1165101, at *7 (N.D. Ill. Mar. 26, 2021) (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008)). As noted above, any outcome in American's favor without the participation of United is likely to generate further litigation. *See supra* Part I.A.3. It would be preferable to resolve this dispute in one forum with all necessary parties: state court. *See Evergreen*, 417 F.2d at 1116.

Fourth, American will have an adequate remedy if the action is dismissed for nonjoinder, because "[t]he state courts of Illinois are a forum available to plaintiff." *Schmidt*, 105 F.R.D. at 161; *see* Fed. R. Civ. P. 19(b)(4); *see* United Mot. to Dismiss 7, Dkt. 7-7 (noting American may proceed in state court). This factor weighs in favor of dismissal.

## II. IN THE ALTERNATIVE, COUNTS II AND III SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

If the Court concludes dismissal is not warranted under Rule 12(b)(7), the Court should nevertheless dismiss Counts II and III for failure to state claims upon which relief may be granted, because breach of the duty of good faith and fair dealing (Count II) and requests for declaratory and injunctive relief (Count III) are not independent causes of action.

13

In Count II, American alleges that by proceeding with the gate space redetermination, the City has breached a duty of good faith and fair dealing implicit in the AULA. Compl. ¶ 88, Dkt. 1. However, under Illinois law, breach of the duty of good faith and fair dealing is not an independent cause of action in a contract dispute such as this one. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002); *LaSalle*, 588 F. Supp. 2d at 853; Compl. ¶¶ 81-85, Dkt. 1 (alleging breach of a "contractual duty" and describing the City's exercise of its "contractual discretion"). Breach of the duty of good faith and fair dealing may be considered as "a basis for a breach of contract action," but it cannot be asserted as a standalone claim. *LaSalle*, 588 F. Supp. 2d at 853; *see also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000) (explaining that the duty of good faith and fair dealing "merely guides the construction of contracts" and cannot be the basis for an independent cause of action (internal quotation and citation omitted)). Count II therefore does not state a claim upon which relief may be granted and should be dismissed.

In Count III, American seeks declaratory and injunctive relief. Compl. ¶¶ 90-95, Dkt. 1. However, declaratory judgments and injunctions are forms of relief, not independent causes of action. *See Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016). As American has filed this suit in federal court, the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies. *Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939 (7th Cir. 1983) ("It is immaterial that the amended complaint does not mention the Declaratory Judgment Act but instead asks for a declaratory judgment under the Illinois Civil Practice Act, which is inapplicable to suits in federal court."); *Willcoxon v. ConcertoHealth, Inc.*, No. 17 C 1802, 2017 U.S. Dist. LEXIS 190382, at *1 n.1, *3 & n.3 (N.D. Ill. Nov. 17, 2017) (applying federal Declaratory Judgment Act to case in federal court based on diversity jurisdiction) (provided in Attachment 1

to this memorandum). The Declaratory Judgment Act "creates only a remedy and not an independent cause of action." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021); *see also Elward*, 214 F. Supp. 3d at 708 ("[A] court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." (citation omitted)). An injunction is likewise "an equitable remedy, not a separate cause of action." *Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015). Therefore, Count III does not state a cognizable cause of action and should be dismissed. *See Elward*, 214 F. Supp. 3d at 708.

### III. THE CLAIMS AGAINST THE COMMISSIONER SHOULD BE DISMISSED.

The complaint improperly names Commissioner McMurray, in his official capacity as CDA Commissioner, in addition to the City. Compl. ¶ 17, Dkt. 1. "[A] suit against a government official in his official capacity is actually a suit against the office." *Ade v. City of Chicago*, No. 96 C 4750, 1996 WL 745334, at *1 (N.D. Ill. Dec. 27, 1996). Where a complaint is brought against both a municipality and its officer in his official capacity, the official-capacity claims are redundant and should be dismissed. *See Campion, Barrow & Assocs., Inc. v. City of Springfield*, No. 06-3215, 2006 WL 8554804, at *3 (C.D. Ill. Nov. 27, 2006). Here, because the claims against Commissioner McMurray are also brought against the City, they are duplicative and redundant, and the claims against Commissioner McMurray should be dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, the City respectfully requests the Court dismiss this action for failure to join a required party who cannot be joined without depriving the Court of jurisdiction. In the alternative, if the Court does not dismiss this action, the City respectfully requests the Court dismiss Counts II and III for failure to state a claim on which relief can be granted and dismiss Commissioner McMurray as an improperly named defendant.

Respectfully submitted on July 8, 2025.

/s/ Samantha R. Caravello
Samantha R. Caravello (Bar No. 48793 (CO))
Peter J. Kirsch (Bar No. 28489 (CO))
KAPLAN KIRSCH LLP
1675 Broadway, Suite 2300
Denver, Colorado 80202
Telephone: (303) 825-7000
E-mail: scaravello@kaplankirsch.com
        pkirsch@kaplankirsch.com

Fiona A. Burke (ARDC No. 6273779)
Cornel H. Kauffman (ARDC No. 6300161)
CITY OF CHICAGO DEPARTMENT OF LAW
2 N. LaSalle Street, Suite 540
Chicago, IL 60602
Telephone: (312) 744-6929
           (312) 742-0330
E-mail: fiona.burke@cityofchicago.org
        cornel.kauffman@cityofchicago.org

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Samantha Caravello, an attorney, certify that on July 8, 2025, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will serve on all counsel of record.

*/s/ Samantha R. Caravello*
Samantha R. Caravello