IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25-cv-04874 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| THE CITY OF CHICAGO and MICHAEL J. ) | |
| MCMURRAY, in his capacity as ) | |
| Commissioner of the Chicago Department of ) | |
| Aviation ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION**

American Airlines, Inc. ("American") brings this action against the City of Chicago and Michael J. McMurray, Commissioner of the City's Department of Aviation (together, "the City") alleging breach of the Airline Use and Lease Agreement (the "AULA" or "Agreement"), which governs the rights and obligations of the City and the airlines operating at O'Hare International Airport ("O'Hare").[1] Specifically, American alleges that defendants violated the AULA by prematurely heeding a request made by United Airlines, Inc. ("United") to redetermine gate space allocated to each airline operating at O'Hare. United now moves to intervene (dkt. 7) as of right pursuant to Federal Rule of Civil Procedure Rule 24(a)(2). The motion is granted.

**BACKGROUND**[2]

In March 2018, United, American, and other airlines operating at O'Hare entered into a "fiercely negotiated" AULA with the City. (Dkt. 1 ¶ 5; Dkt. 1-1 at 1.) American describes the

---

[1] Venue is proper under 28 U.S.C. § 1391(b). This court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

[2] The court accepts "as true the non-conclusory allegations of the motion [to intervene]" and American's complaint. *Volkswagen Grp. of Am., Inc.* v. *Aukur-US*, No. 20-CV-03128, 2021 WL 1172772,

AULA to be "unlike an ordinary commercial lease" in that it resulted from "collective negotiations among airlines and the airport authority." (Dkt. 1 ¶¶ 5, 21, 22.)

After the negotiation period, each of the Long-Term Signatory Airlines, which the AULA defines as those that "executed this Agreement or a substantially similar agreement with a Term that expires on December 31, 2033," entered into a separate agreement with City. (Dkt. 1 ¶ 70; Dkt. 7-2 at 25.)[3] Each airline's AULA identifies only two parties: the individual airline and the City of Chicago. (*See* Dkt. 1-1; Dkt. 7-2.) The City represents that each of the agreements is "virtually identical, with the only difference (in addition to each airline's identifying information) being an exhibit that shows the specific premises each airline is authorized to use." (Dkt. 28 at 3.)

The AULA governs, among other issues, the number of gates allocated to each airline and the process the City is required to follow when redetermining allocation of gate space. (Dkt. 1 ¶¶ 5, 8; Dkt. 1-1.) Section 5.4 of the AULA

> provides for annual redetermination of preferential use gates (i.e., gates assigned for the primary use of a particular airline). This annual redetermination can be initiated by [the City] or requested by an airline. If requested by an airline, [the City] shall analyze flight data from the previous calendar year and other factors to determine the number of preferential use gates assigned to each airline.

(Dkt. 1 at 4 n.1; Dkt. 1-1 §§ 5.4.1, 5.2.4; Dkt. 1 ¶¶ 43.)

---

at *1 (N.D. Ill. Mar. 26, 2021) (citing *Ill.* v. *City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)); *Fed. Deposit Ins. Corp.* v. *FBOP Corp.*, No. 14 C 4307, 2014 WL 4344655, at *1–2 (N.D. Ill. Sept. 2, 2014) (holding that it must accept as true the facts alleged in the plaintiff's complaint and in the proposed intervenor's motion). Certain facts asserted in the City's memoranda which appear to be undisputed are also referenced.

[3] "Signatory Airline" means an Air Carrier that has executed a Signatory Airline Use and Lease Agreement with the City. A Signatory Airline may be either a Long-Term Signatory Airline or a Short-Term Signatory Airline." (Dkt. 7-4 at 295.) United represents that the seven Long-Term Signatory Airlines are identified in Exhibit D-1, which depicts gate space assignments as of May 12, 2018. (See Dkt. 7-3 at 104.)

On January 28, 2025, United requested that the City commence the gate redetermination process under Section 5.4. (Dkt. 7 at 6.) Defendants notified other signatory airlines of United's request on February 3, 2025 (dkt. 1 ¶ 48), and proposed, after proceeding as outlined in the AULA, that "United would gain approximately 5 preferential use gates at O'Hare and American would lose approximately 4 preferential use gates at O'Hare." (Dkt. 1 ¶¶ 73, 74.) The gate space redetermination is scheduled to go into effect on October 1, 2025. (Dkt. 1 ¶ 12.)

Signatory Airlines were given until May 1, 2025, to either reject or request a modification to the proposal. (Dkt. 7 at 6.) American filed this lawsuit on May 2, arguing that defendants violated the AULA by redetermining the allocation of gate space in January 2025. American alleges that Section 5.3.2 of the AULA prohibits the City from engaging in the gate redetermination process until at least April 1 of the year following the end of a "Gate Space Ramp-up Period" which would begin after the completion of certain projects at O'Hare. (Dkt. 1 ¶¶ 6-7, 9-11, 50-52.) Given the timing of those projects, American contends that defendants could not have commenced a gate redetermination process until April 1, 2027, "at the earliest." (Dkt. 1 ¶ 11.)

American asks this court to declare that the AULA prohibits defendants from redetermining preferential gate space allocations until at least April 1, 2027, to enjoin defendants from initiating a redetermination process until then, and to award monetary damages caused by defendants' alleged breach of the AULA. Before the court is United's motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), which it filed on May 5, 2025.

**LEGAL STANDARD**

Under Rule 24(a)(2), intervention as of right is granted if the movant "(1) makes a timely application; (2) has an interest relating to the subject matter of the action; (3) that would potentially be impaired by the disposition of the action; and (4) is not adequately represented by

3

the existing parties to the action." *Revelis* v. *Napolitano*, 844 F. Supp. 2d 915, 924 (N.D. Ill. 2012) (citing *Reich* v. *ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)); Fed. R. Civ. P. 24(a)(2). "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *State* v. *City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Reich*, 64 F.3d at 321). Even though "intervention of right will not be allowed unless all requirements of the Rule are met," *Sokaogon Chippewa Cmty* v. *Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000), courts construe Rule 24(a)(2) liberally and "resolve doubts in favor of allowing intervention." *Michigan* v. *U.S. Army Corps of Engr's*, No. 10-CV-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010) (citation omitted).

## ANALYSIS

American does not dispute the timeliness of United's motion but argues that United has failed to meet its burden to establish the remaining elements under Rule 24(a)(2). The court concludes that United has an interest related to the subject matter of American's lawsuit, that the disposition of the underlying action would impair United's ability to protect that interest, and that the City does not adequately represent United's interests.

### I. Legally Protectable Interest

United argues that it has a right to intervene in this action because it has a legally protected interest in the gate redetermination process under the AULA. Under Rule 24(a)(2), a proposed intervenor must have an "interest relating to the property or transaction that is the subject matter of the action" that is "direct, significant, and legally protectable." *Bost* v. *Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023) (citation omitted). The analysis is "highly fact-specific," *Sec. Ins. Co. of Hartford* v. *Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir. 1995), and "focus[es] on the issues to be resolved by the litigation and whether the potential

4


intervenor has an interest in those issues." *Baker* v. *Cassava Scis., Inc.*, No. 24 C 977, 2024 WL 3580627, at *5 (N.D. Ill. May 29, 2024). The Seventh Circuit has described this interest as "unique," in that it must "[belong] to the would-be intervenor in its own right, rather than derived from the rights of an existing party." *Bost*, 75 F.4th at 687. Nonetheless, it has recognized "statements of the Supreme Court [in various cases] as encouraging liberality in the definition of an interest." *Baker*, 2024 WL 3580627, at *5 (citing *Meridian Homes Corp.* v. *Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).

United identifies two "legally protectable interests" in this lawsuit, one being economic. If the City's proposal were to take effect in October 2025, United would gain approximately five additional gates. (Dkt. 1 ¶ 12.) Courts have found, however, that a "mere" economic interest of this sort to be insufficient to warrant intervention as of right. *Hartford Underwriters Ins. Co.* v. *Worldwide Transportation Shipping Corp.*, No. 16 C 2381, 2017 WL 878729, at *3 (N.D. Ill. Mar. 6, 2017) (citing *Flying J, Inc.* v. *Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009)); *Meridian Homes*, 683 F.2d at 204 (affirming district court's denial of a motion to intervene as of right where proposed intervenors' interest in litigation was limited to financial profits).[4]

United asserts a second "legally protectable interest": its contractual rights under the AULA. *Zeeb Holdings, LLC* v. *Johnson*, 338 F.R.D. 373, 378 (N.D. Ohio 2021) ("Protecting one's contractual rights is surely a substantial legal interest" in the Rule 24(a)(2) analysis.). From United's perspective, this lawsuit "concerns the interpretation of a contract to which [it] is a party" (dkt. 7 at 4) and states that "the airlines here have signed on to the same contract." (Dkt.

---

[4] United's reliance on *Driftless Area Land Conservancy* v. *Huebsch*, 969 F.3d 742, 744, 748 (7th Cir. 2020), is not helpful. In *Driftless*, the court only considered the facts that proposed intervenors had "substantial sunk and anticipated future investments in the power line [at the core of the underlying lawsuit], and a valid expectation of a return on their investment" in evaluating whether the existing parties adequately represented the intervenors' interests—a different prong of the Rule 24(a)(2) analysis. *Id.* at 748.

5

29 at 6.) It does not view the AULA as a traditional bilateral agreement, rather contending that the AULA "govern[s] the airlines' rights and obligations—not only with respect to the City but also to each other at O'Hare." (Dkt. 29 at 2.)

American repeatedly insists that "United is not a party" to its agreement with the City and is "therefore a stranger to American's lawsuit against the City." (Dkt. 26 at 1, 2, 4, 5, 7, 9, 12.) In so arguing, American strikes a different tone compared to what it alleged in its complaint. There, American alleges that it signed the AULA along with "other airlines, and Defendants" and characterized "[t]he AULA [to be] … unlike an ordinary commercial lease" because it involved "collective negotiations among airlines and the airport authority." (Dkt. 1 ¶ 5, 22.)

Ultimately, whether United is a party to American's contract with the City is not dispositive. Courts regularly permit intervention as of right to entities that are nonparties to contracts. *See, e.g.*, *Lake Invs. Dev. Grp., Inc.* v. *Egidi Dev. Grp.*, 715 F.2d 1256, 1259 (7th Cir. 1983) (reversing denial of motion to intervene as of right where proposed intervenor was not a party to the real-estate contract); *Atain Specialty Ins. Co.* v. *Hodge*, No. 3:21-CV-00415-JPG, 2022 WL 4367358, at *1 (S.D. Ill. Sept. 21, 2022) (granting broker's motion to intervene in insurer's declaratory judgment claim against insured regarding the scope of insurance coverage where the broker was not a party to the insurance policy). The Seventh Circuit has firmly held that intervention as of right is appropriate where the proposed intervenor asserts a "claim to a legally protected right that is in jeopardy and can be secured by the suit." *Aurora Loan Servs., Inc.* v. *Craddieth*, 442 F.3d 1018, 1022 (7th Cir. 2006).[5]

---

[5] American, citing *Keith* v. *Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985), omits the "relating to" qualifier in Rule 24(a)(2) when arguing that "an intervenor must have a legally protectable interest in the 'property or transaction that is the subject of the action'" (Dkt. 32 at 4, citing Fed. R. Civ. P. 24(a)(2)). But the Rule plainly states that "the court must permit anyone to intervene who: [] claims an interest *relating to* the property or transaction that is the subject of the action[.]" Fed. R. Civ. P. 24(a)(2)

6

American contends that "contractual privity is required to intervene as of right" (dkt. 26 at 6) but points to no case explicitly establishing such a bright-line rule. In a number of cases upon which American relies, courts declined to grant intervention as of right for another reason: the proposed intervenors' interests in the underlying litigation were distinct from the ongoing contract dispute between the existing parties. *See, e.g.*, *Westlands Water Dist.* v. *United States*, 700 F.2d 561, 563 (9th Cir. 1983) (affirming denial of intervention to a non-profit environmental policy organization in a contract dispute where proposed intervenor's interest was in "enlightened public policy"); *Keith*, 764 F.2d 1265 at 1268 (affirming denial of intervention of a lobbyist in a case filed by a group of abortion providers seeking to challenge the constitutionality of a state statute regulating abortion access because lobbyist's interests were not direct or substantial); *Fuel Avenue, Inc.* v. *Nat'l Brokers of Am., Inc.*, 329 F.R.D. 461, 464 (S.D. Fla. 2019) (denying intervention because the proposed intervenors' "asserted interest" in noncompete agreements was "too collateral to this suit to merit intervention.").[6]

In this case, United has met its burden to establish an interest related to the subject matter of this action: the AULA. Whether United is seeking to intervene to protect its legally protectable rights under the AULA it entered into with the City or under American's AULA with the City is a

---

(emphasis added). The Seventh Circuit has consistently adopted the "relating to" language in subsequent cases.

[6] American cites several additional cases in which courts declined to grant motions to intervene because the proposed intervenors' interests in the litigation were economic. *See Mt. Hawley Ins. Co.* v. *Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (noting that purported intervenor is "not a party to the … insurance policy [at issue] and has no legally protectable interest in that insurance policy" but ultimately affirming denial of a motion to intervene because proposed intervenor's interest in litigation was "purely economic"); *Meridian Homes*, 683 F.2d at 204 (affirming district court's decision to deny intervention to shareholders of a joint venture who only held "an indirect interest to the extent that their rights to profits may be affected" by joint venture's dissolution proceeding); *Lloyd's Syndicate 3624* v. *Biological Resource Center of Illinois*, No. 18-cv-115, 2018 WL 3861559, at *3 (N.D. Ill. Aug. 14, 2018) (denying third parties' motion to intervene because their only interest in the case was their ability to recover damages in separate and unrelated cases in state court).

distinction without a difference. Even if the court were to read the AULA as a bilateral agreement per American's urging, United has a "direct" and "significant" interest "in the issues to be resolved by the litigation." *Reich*, 64 F.3d at 322 (overturning district court to permit intervention as of right in the government's Fair Labor Standards Act lawsuit because its resolution would affect separate contracts).

American's lawsuit requires the court to interpret whether a redetermination of gate space may take place before April 2027 under the AULA. Even if each airline has a separate agreement with the City, resolution of American's lawsuit necessarily affects the scope of United's rights under its AULA. The relief American seeks therefore imbues "a meaningful contractual dimension to [United's] interest." *See Reich*, 64 F.3d at 323.

That United can "enforce the terms of its lease in any competent court, just as American has in this suit," as American concedes, lends further support to United's legally protectable interest in this action. (Dkt. 32 at 7.) *See Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, No. 15-CV-1724, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (quoting *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996)) ("The clearest example of such an interest ... is where the would-be intervenor has a legal claim that could be made the basis of an independent suit against the defendant in the action in which he seeks to intervene.").

## II.  Potential Impairment of Proposed Intervenor's Interests

Impairment of a nonparty's interest exists where resolution of the "legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes*, 683 F.2d at 204. The fact that the prospective intervenor "could bring its claims later through separate, subsequent, burdensome litigation"

8

does not mean a court must deny intervention. *City of Chicago* v. *FEMA*, 660 F.3d 980, 985 (7th Cir. 2011).

United argues that a disposition in American's favor would halt the gate redetermination from taking effect until at least April 2027. Additionally, it argues, if it were to pursue the "exact same issue" by asking a court to interpret the pertinent sections of the AULA in a separate lawsuit, this court's interpretation would be afforded "great weight." (Dkt. 29 at 8.) And if another court were to disagree with this court's interpretation of the AULA, then defendants would be burdened with conflicting mandates from the courts. *Atain Specialty*, 2022 WL 4367358, at *2 (granting intervention because there would be "consistency in resolving these issues in a single proceeding and denial of intervention could create conflicting results").

American says that, because United is free to initiate a separate action under its own lease, its interests are not impaired. As already indicated, the option of bringing a separate case does not make United's intervention in this one inappropriate. *Judicial Watch, Inc.* v. *Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *4 (N.D. Ill. July 18, 2024); see also *FEMA*, 660 F.3d at 985 (holding that the ability for a proposed intervenor to file a subsequent lawsuit is not "an automatic bar to intervention"). "Because a favorable result for Plaintiff[] would damage," its interests, United satisfies this element. *See Judicial Watch*, 2024 WL 3454706, at *4.

### III.  Adequacy of Representation

The Seventh Circuit has developed a three-tiered test to evaluate whether United has demonstrated that no existing party to this litigation can adequately represent its interests. *See Planned Parenthood of Wisc., Inc.* v. *Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). Under the default rule, a proposed intervenor must meet a "minimal burden." *Bost*, 75 F.4th at 689 (citation omitted) of showing "that representation of his interest 'may be' inadequate." *Planned*

9

*Parenthood*, 942 F.3d at 799 (citing *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

American advocates for application of an intermediate standard where "the prospective intervenor and the named party have 'the same goal,'" where their "interests are genuinely identical." *Bost*, 75 F.4th at 688 (quotations omitted). However, United and the City's interests are certainly not identical. It is evident from the briefing that United and the City both "support the gate space redetermination moving forward." (Dkt. 28 at 7.) But that commonality is not dispositive. "After all, 'a prospective intervenor must intervene on one side of the 'v.' or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail.'" *Bost*, 75 F.4th at 688 (citing *Driftless*, 969 F.3d at 748.

United identifies several interests that diverge from the City's, most notably its obligations to investors, passengers, employees, and other business stakeholders that the City does not share. Although some of these interests are shared, the City's "obligations are to the general public." *Driftless*, 969 F.3d at 748. The City's interest might diverge from its own United argues, in potential settlement discussions where the City could make an "accommodation … on redetermination timing to resolve American's lawsuit." (Dkt. 29 at 10.) *See Judicial Watch*, 2024 WL 3454706, at *5 (finding that intervention as of right was warranted where a potential intervenor "cite[d] potential conflict of interest in future settlement negotiations"). As United has "identified at least one conflict that would arise in the context of a negotiated settlement … that is enough." *Id*.

10

**CONCLUSION**

For the reasons stated herein, the motion filed by United to intervene as of right (dkt. 7) is granted.

Date: July 10, 2025

_____
U.S. District Judge Joan H. Lefkow